Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF CODY CATANZARITE,
M.M., and LINDA CATANZARITE

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| ESTATE OF CODY CATANZARITE, M.M., and LINDA CATANZARITE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>INTRODUCTION</u>

37-year-old CODY CATANZARITE was denied necessary medical treatment by jail staff as a pretrial detainee at the Sacramento County Main Jail in custody of the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, resulting in his death on July 21, 2023.

## <u>JURISDICTION & VENUE</u>

1.      This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to

address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has jurisdiction of the state claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Sacramento, California.

## EXHAUSTION

4.      On September 7, 2023, the ESTATE OF CODY CATANZARITE, M.M., and LINDA CATANZARITE submitted a government claim to the COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT relating to the claims asserted in this action. (Claim No. L2301038.)

5.      On October 30, 2023, the COUNTY OF SACRAMENTO issued a "Notice of Rejection of Claim."

6.      By October 26, 2023, the SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed or refused to act on the claim.

## PARTIES

7.      Plaintiff ESTATE OF CODY CATANZARITE appears by and through real-party-in-interest Plaintiff M.M., the biological child of CODY CATANZARITE, who brings this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff M.M. brings this action as the successor-in-interest on behalf of CODY CATANZARITE. A declaration regarding Plaintiff M.M.'s status as the successor-in-interest to CODY CATANZARITE is attached, pursuant to California Code of Civil Procedure § 377.32.

8.      Plaintiff M.M. is a resident of the State of California, County of Lake. Plaintiff M.M. is the biological daughter of CODY CATANZARITE. Plaintiff M.M. brings this action: (1) in a representative capacity, as the successor-in-interest on behalf of CODY CATANZARITE; and (2) in an individual capacity, on behalf of herself.

2

9.      Plaintiff LINDA CATANZARITE is a resident of the State of California, County of Sacramento. Plaintiff LINDA CATANZARITE is the biological mother of CODY CATANZARITE. Plaintiff LINDA CATANZARITE brings this action in an individual capacity, on behalf of herself.

10.     Defendant COUNTY OF SACRAMENTO is located in the State of California. Defendant COUNTY OF SACRAMENTO is a "public entity," pursuant to California Government Code § 811.2.

11.     Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT located in the State of California, COUNTY OF SACRAMENTO. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT is a "public entity," pursuant to California Government Code § 811.2.

12.     Defendant JIM COOPER is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JIM COOPER is sued in an individual capacity.

13.     Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. is and was, at all times material herein, a Maryland corporation licensed to do business in California, with their corporate headquarters located in Columbia, Maryland.

14.     Defendant JAMIE HERBST is and was, at all times material herein, employed by Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., and contracted by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant JAMIE HERBST is sued in an individual capacity.

15.     Defendant MARIACELINE CLAMOR is and was, at all times material herein, employed by Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, acting within the scope of employment and under color of state law. Defendant MARIACELINE CLAMOR is sued in an individual capacity.

16.     Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and/or Defendant

3

MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by their fictitious names and their true and correct names and identities will be substituted when ascertained.

**GENERAL ALLEGATIONS**

17.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

18.     On information and belief, Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. was directly responsible for staffing, training, supervising, and following certain policies and customs at the jail. Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. provided licensed, qualified physicians and nurses on a contract basis to Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, and employed or was responsible for medical staff at the jail, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 11 to 20.

19.     On July 20, 2023, CODY CATANZARITE was arrested and transported to the Mercy San Juan Medical Center, 6501 Coyle Avenue, Carmichael, CA 95608, for medical clearance prior to booking.

20.     CODY CATANZARITE was seen by Nathaniel Silvestri, M.D.

21.     During the appointment, CODY CATANZARITE reported that he had ingested two grams of heroin prior to his arrest, including "smok[ing] about a quarter of a gram and then swallow[ing] the rest of it." CODY CATANZARITE also reported that "he used methamphetamines earlier today."

22.     CODY CATANZARITE was medically cleared for incarceration and discharged to law enforcement "with [a prescription] for Narcan" and instructions to "[r]eturn to ER if symptoms worsen."

23.     At about 2:46 p.m., CODY CATANZARITE was booked into the custody of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER at the Sacramento County Main Jail, 651 I Street, Sacramento, CA 95814.

24.     Defendant JAMIE HERBST, a register nurse (RN), conducted a medical screening on

4

CODY CATANZARITE.

25.     Therein, CODY CATANZARITE's "past problems" during "previous incarnation" were identified as including "Stimulant use disorder, amphetamine type"; "Opioid abuse"; "Alcohol abuse, continuous drinking behavior"; and "Polysubstance abuse."

26.     CODY CATANZARITE's Clinical Opiate Withdrawal Scale (COWS) score was identified as "1."

27.     Defendant JAMIE HERBST ordered detox housing for CODY CATANZARITE.

28.     Defendant JAMIE HERBST did not issue other routine orders, such as Clinical Opiate Withdrawal Scale (COWS) and Clinical Institute Withdrawal Assessment (CIWA) assessments, alcohol and opioid detox regimens, or an urgent referral to a medical provider.

29.     Defendant JAMIE HERBST could and should have issued routine orders, such as Clinical Opiate Withdrawal Scale (COWS) and Clinical Institute Withdrawal Assessment (CIWA) assessments, alcohol and opioid detox regimens, and an urgent referral to a medical provider, especially in consideration of CODY CATANZARITE's documented history of fentanyl, heroin, and alcohol substance use disorders.

30.     Defendant JAMIE HERBST ordered that a second nurse conduct an intake assessment at a later time.

31.     Defendant JAMIE HERBST's order for a second assessment was delayed, where CODY CATANZARITE had been removed from the booking loop for processing by custody staff during his assessment by Defendant JAMIE HERBST but before the second assessment could be conducted.

32.     At about 9:00 p.m., CODY CATANZARITE was classified, dressed-out, and designated to be housed at the jail.

33.     At about 10:23 p.m., Defendant MARIACELINE CLAMOR, a registered nurse (RN), conducted a second medical screening on CODY CATANZARITE.

34.     About five and one-half hours passed between when CODY CATANZARITE was subject to the first medical assessment by Defendant JAMIE HERBST and the second medical assessment.

35.     CODY CATANZARITE's Clinical Opiate Withdrawal Scale (COWS) score was identified as "9," including documented risk factors such as elevated "Pulse," "Sweating," "Bone or Joint

5

Aches," "Runny Nose or Tearing," "Yawning," and "Gooseflesh Skin."

36.     Defendant MARIACELINE CLAMOR ordered an opioid detox regimen and gave a first dose, ordered detox housing, COWS monitoring twice daily, a lower bunk assignment, and a medical provider referral.

37.     On July 21, 2023, about 9:00 a.m., Defendants DOE 1 to 20, custody staff members, observed CODY CATANZARITE on the jail's closed-circuit television (CCTV) surveillance system "taking his mattress from cell to recreational area: and "then lay[ing] down."

38.     At about 9:18 a.m., or approximately 15 minutes later, Defendants DOE 1 to 20 went "to check on [CODY CATANZARITE] and he was found to be unresponsive [with] no pulses."

39.     At about 9:42 a.m., "after about 24 min[utes] of CPR," CODY CATANZARITE "had return of pulses…"

40.     CODY CATANZARITE was transferred from the jail to the emergency room of the Sutter Medical Center.

41.     Later, CODY CATANZARITE died of cardiac arrest caused by a suspected drug overdose.

42.     CODY CATANZARITE died as a result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's deliberate indifference to immediate medical needs.

43.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed timely to observe, summon care, and/or treat CODY CATANZARITE's medical emergency but could have done so, including by responding to complaints and obvious medical conditions or by transferring him to an outside medical facility that could properly and timely diagnose and provide treatment.

44.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed to comply with California Code of Regulations title 15 § 1207 (Medical Receiving Screening), California Code of Regulations title 15 § 1208 (Access to Treatment), California Code of Regulations title 15 § 1210 (Individualized Treatment Plans), California Code of Regulations title 15 § 1213 (Detoxification Treatment), and the policies, procedures, and training of the National Commission on Correctional Health Care, Standards for Health Services in Jails ("NCCHC") and Adult Correctional Health ("ACH")

6

Standardized Nursing Procedures ("SNP"), including: NCCHC Standard J-F-01 (Ongoing Care for Chronic Illness); NCCHC Standard J-E-02 (Receiving Screening); NCCHC Standard J-E-04 (Initial Health Assessment); ACH Policy 01-12 (Access to Care); ACH Policy 04-08 (Specialty Referrals); ACH Policy 04-09 (Medical Transportation); ACH Policy 04-22 (Hospital Care); ACH Policy 05-02 (Medication Assisted Treatment); ACH Policy 05-05 (Nurse Intake); ACH Policy 05-06 (Methadone Treatment); ACH Policy 05-07 (SUD Counselor); ACH Policy 05-13 (Initial History and Physical Assessment); ACH Policy 06-02 (Patients with Disabilities); ACH SNP Re: "Alcohol Withdrawal Syndrome Treatment"; ACH SNP Re: "Benzodiazepine Withdrawal Treatment"; and ACH SNP Re: "Opiate Withdrawal Treatment."

45.     Defendants DOE 1 to 20 failed to comply with California Code of Regulations title 15 § 1027 (Number of Personnel), California Code of Regulations title 15 § 1027.5 (Safety Checks), and the policies, procedures, and training of the California Commission on Peace Officer Standards and Training ("POST") and Sacramento County Sheriff's Department ("SCSD"), including: POST Learning Domain 31 (Custody); SCSD Operations Order 6-05 (Housing Unit Checks); SCSD Deputy Sheriff Training Manual; and SCSD Training Module Re: "Security Rounds and Key Control."

46.     From July 20, 2023, to July 21, 2023, while CODY CATANZARITE was incarcerated at the jail, Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were subject to the terms of a consent decree entered in *Mays v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN.

47.     On August 15, 2023, the "Fourth Monitoring Report of the Medical Consent Decree" was entered in *Mays*. (*Mays* ECF No. 168-1.) Therein, the monitoring report specifically referenced and identified CODY CATANZARITE's death, identifying him as "Patient #39." Therein, the report states:

- "[R]eview of two recent deaths showed that inmates were being taken out of the booking loop and processed by custody before medical screening took place." "Patients #38 and #39. The length of time to conduct Tier 2 medical screening was 5.5 hours for each of the patients. The cause of death for these two patients is unknown, and it is not possible to determine whether delays in Tier 2 medical screening contributed to their deaths." (*Mays*

1    ECF No. 168-1 at 9.)

2    •    "In April 2023, an inmate died while in a holding cell after ingesting a substance, and as

3         noted above, in July 2023, two patients died in the detox unit. Although the cause of the

4         deaths is unknown, fentanyl overdose is suspected." "Patients #22, #38, and #39. The

5         cause of death for these patients is unknown, however patient #39 was taken to the ED for

6         reportedly swallowing fentanyl, just prior to being booked into the jail." (*Mays* ECF No.

7         168-1 at 15.)

8    •    "**Patient #39** This patient arrived on 7/20/23 at 14:46, from the ED after he reported

9         ingesting fentanyl and was medically screened by a nurse. He had a history of fentanyl use

10        and continuous alcohol consumption. The nurse saw the patient for a return from the ED

11        and completed what appeared to be the full medical screening. The patient's COWS score

12        was 1. The nurse ordered detox housing, but not other routine orders such as COWS and

13        CIWA assessments, alcohol/opioid detox regimens, or an urgent referral to a provider.

14        The RN then ordered a second nurse intake assessment. [¶] The inmate was in male

15        classification and dressed out at 9 pm and was to be housed in 8 East. At 22:00, a LCSW

16        saw the patient in the 2E Indoor recreation. At 22:23, a RN conducted a second full

17        assessment in booking, about 5.5 hours after the first screening. The patient's COWS score

18        had risen to 9. The RN ordered an opioid detox regimen and gave a first dose, ordered

19        detox housing, COWS monitoring twice daily, a lower bunk, and a medical provider

20        referral. He went into cardiac arrest 12 hours later with suspected drug overdose. [¶]

21        **Summary:** A mortality review has not yet been completed. However, concerns are that

22        after Tier 1 screening, the patient was taken out of the booking loop for processing by

23        custody before Tier 2 medical screening was conducted. In the 5.5 hours before a nurse

24        saw the patient, his COWS score increased from 1 to 9. Given his history of fentanyl and

25        alcohol substance use disorder, starting the patient on opioid and alcohol detox regimens

26        needed to be considered, however because Tier 2 screening was delayed, it was not."

27        (*Mays* ECF No. 168-1 at 142.)

28    \ \ \

## POLICY / CUSTOM ALLEGATIONS

48. Defendant JIM COOPER, in his capacity as Sheriff, is and was a final policymaking official for Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Specifically, Defendant JIM COOPER is and was responsible for the provision of medical and mental health care to inmates/prisoners in his custody at Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities, including assessment of inmates for medical emergencies, medical needs, and mental health needs, and all policies, procedures, customs, hiring, staffing, supervision, and training related thereto.

49. Defendant JIM COOPER has served as Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT Sheriff since December 2022.

50. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, maintain and/or acted pursuant to inadequate polices, customs, training, and/or supervision, resulting in the following deficiencies:

       (a)    failure adequately to observe, monitor, and supervise inmates within the jail;

       (b)    failure adequately to staff the jail with necessary officials, staff, and personnel;

       (c)    failure adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail;

       (d)    failure adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs; and

       (e)    failure adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs.

51. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER, including subordinate personnel, Defendants JAMIE HERBST,

9

MARIACELINE CLAMOR, and DOE 1 to 20, were deliberately indifferent to CODY CATANZARITE's safety and health, and knew or should have known that CODY CATANZARITE was at risk of harm, based on the following circumstances:

    (a)    jail staff, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, failed adequately to observe, monitor, and supervise inmates within the jail, including CODY CATANZARITE;

    (b)    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER failed adequately to staff the jail with necessary officials, staff, and personnel, including during CODY CATANZARITE's incarnation;

    (c)    jail staff, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, failed adequately to detect and investigate, intervene, and intercede when dangerous and emergency conditions are present inside the jail, including CODY CATANZARITE's medical need;

    (d)    jail staff, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, failed adequately to diagnose, monitor, and treat inmates' necessary and immediate medical needs, including CODY CATANZARITE's medical need; and

    (e)    jail staff, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, failed adequately to summon and provide necessary and immediate medical care for inmates with necessary and immediate medical needs, including CODY CATANZARITE's medical need.

52.    <u>Legal & National Standards</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are inconsistent with state law and widely-accepted standards. For example:

    (a)    California Code of Regulations title 15 § 1027 (Number of Personnel/Medical Receiving Screening)

    (b)    California Code of Regulations title 15 § 1027.5 (Safety Checks)

    (c)    California Code of Regulations title 15 § 1028 (Access to Treatment)

    (d)    California Code of Regulations title 15 § 1210 (Individualized Treatment Plans)

    (e)    California Code of Regulations title 15 § 1213 (Detoxification Treatment)

10

1       (f)    National Commission on Correctional Health Care ("NCCHC") Standards for

2   Health Services in Jails, including J-A-01 (Access to Care); J-C-04 (Health Training for Correctional

3   Officers); J-C-07 (Staffing); J-D-08 (Hospitals and Specialty Care); J-E-02 (Receiving Screening); J-E-

4   04 (Initial Health Assessment); J-E-08 (Nursing Assessment Protocols and Procedures); J-E-09

5   (Continuity, Coordination, and Quality of Care During Incarceration); J-F-01 (Ongoing Care for Chronic

6   Illness); and J-F-04 (Medically Supervised Withdrawal and Treatment).

7       (g)    Institute for Medical Quality ("IMQ") Standards, including 110 (Transfer of

8   Inmates with Acute Illness); 204 (Basic Training for Correctional Personnel); 302 (Receiving Screening);

9   303 (Substance Abuse); 304 (Access to Treatment); 306 (Clinic Care); 307 (Health Inventory &

10   Communicable Disease Screening); 318 (Standardized Procedures/Treatment Protocols); 319 (Continuity

11   of Care); and 328 (Health Maintenance).

12   American Correctional Association ("ACA") Standards, including 4-ALDF-2A-15 (Staffing); 4-ALDF-

13   5A-04, 4-ALDF-5A-06, 4-ALDF-5A-07 (Substance Abuse Programs); 4-ALDF-7B-10 (Training and

14   Staff Development); 4-ALDF-4C-01 (Access to Care); 4-ALDF-4C-05 (Referrals);  4-ADLF-4C-22

15   (Health Screens); 4-ALDF-4C-24 (Health Appraisal), 4-ALDF-4C-25 (Health Appraisal); 4-ALDF-4C-

16   36 (Detoxification); 4-ALDF-4C-37 (Management of Chemical Dependency); 4-ALDF-4D-20

17   (Transfer); 1-HC-1A-01 (Access to Care); 1-HC-4A-05 (Staffing/Referrals); 1-HC-4A-07 (Transfers); 1-

18   HC-1A-19 (Health Screens); 1-HC-1A-22, 1-HC-1A-23 (Health Appraisal); 1-HC-1A-33

19   (Detoxification); and 1-HC-1A-34 (Management of Chemical Dependency).

20       53.    *Mays* Consent Decree: Defendants COUNTY OF SACRAMENTO, SACRAMENTO

21   COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's policies and customs are largely non-

22   compliant with the terms of the court-ordered consent decree issued in *Mays v. County of Sacramento*,

23   United States District Court, Eastern District of California, Case No. 2:18-cv-02081-TLN-KJN. Therein,

24   the plaintiffs alleged numerous "dangerous, inhumane and degrading conditions" at Defendants

25   COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail

26   facilities. In June 2019, Defendant COUNTY OF SACRAMENTO settled the case and agreed, *inter alia*,

27   to changes to jail staffing, facilities, inmate health services, and custodial practices, including the creation

28   and enforcement of polices and trainings that ensure compliance with Americans with Disabilities Act

11

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Catanzarite v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

("ADA") requirements, and improving the delivery of medical care through timely referrals, responses to requests for care and medication disbursement, chronic care treatment plans, appropriate clinic space, and staff training. (<https://www.saccounty.gov/news/latest-news/Pages/County-Jail-Class-Action-Lawsuit-Agreement-Reached.aspx>; <https://www.disabilityrightsca.org/press-release/settlement-approved-in-sacramento-county-jail-class-action-to-ensure-better-treatment>; *see also* <https://www.sacsheriff.com/pages/transparency.php>.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's jail facilities are subject to reporting requirements and quarterly monitoring reports prepared by court-appointed experts, pursuant to the Consent Decree. (*Mays* ECF No. 149.) Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT have failed to achieve compliance with the terms of the consent decree, as demonstrated by monitoring reports and the 2022–23 Sacramento County Grand Jury. For example:

(h)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found, for 75 total consent decree provisions, substantial compliance with 4 provisions (5%), partial compliance with 15 provisions (20%), non-compliance with 39 provisions (52%), and 17 provisions (23%) were not evaluated. (*Mays* ECF No. 136-1.) Specifically, the review's findings were "deeply concerning." (*Id.*) For example, "[t]here are serious and systemic issues resulting in harm to patients, including hospitalizations and death" (*id.* at 7–8), "[t]he sick call system does not provide timely access to care" (*id.* at 8), "[t]here are excessive delays in transporting patient[s] to the hospital" (*id.* at 9), and "[t]here are serious nursing and medical quality of care issues" (*id.* at 9). The report made an "alarming finding [] that nurses do not notify physicians when a patient's condition is clearly deteriorating, which has resulted in hospitalizations and deaths" and that, even when physicians are notified, "physicians also minimized patient clinical findings and failed to adequately treat their underlying chronic medical conditions." (*Id.* at 9.) "These cases may reflect a wider cultural issue at the jail in how health care personnel view their obligations to provide timely, appropriate and compassionate care to patients." (*Id.* at 9.)

(i)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found, for 75 total consent decree provisions, substantial compliance with 12 provisions (16%), partial compliance with 19 provisions (25%), non-compliance with 37 provisions (49%), and seven provisions

(9%) were not evaluated. (*Mays* ECF No. 149-1 at 13.) Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g. chronic care, mortality review)" and that "[c]onsiderable work remains to achieve Consent Decree compliance." (*Id*. at 12.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 11–12.) The report found that "there has been custody interference in the provision of health care," including where custody staff has denied inmates necessary medical care and, in at least one case, allowed an inmate to "languish[] to near death before intervention took place." (*Id*. at 9.)

(j)     On March 1, 2022, *Mays* class counsel sent a letter to Defendant COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT describing "ongoing jail overcrowding" and reports that "[p]eople told us that they were treated 'like animals' when they asked the deputies passing by … how they could access the health care services they needed." (*Mays* ECF No. 153-4.)

(k)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found, for 75 total consent decree provisions, substantial compliance with 13 provisions (17%), partial compliance with 22 provisions (29%), non-compliance with 33 provisions (44%), and seven provisions (9%) were not evaluated. (*Mays* ECF No. 162-1 at 14.) Specifically, the "review showed that inmates with serious medical needs continue to experience harm as a result of lack of an adequate infrastructure (e.g., space, staff), systems issues (e.g., intake screening and chronic care) and quality of care (e.g., chronic care, mortality review)" and "[c]onsiderable work remain[ed] to achieve Consent Decree compliance." (*Id*. at 13.) For example, "[t]he health care system does not provide inmates timely access to care for their serious medical needs." (*Id*. at 10–12.) The "review showed continuing harm to patients as a result of population pressures, lack of medical and mental health beds, health care systems issues, and lapses in care." (*Id*. at 6.) The report found a "practice of providers cutting and pasting notes" which "risks documenting history and physical examinations and education that have not been conducted and, in some cases, simply amounts to falsification of medical records." (*Id*. at 28.)

(l)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found,

for 75 total consent decree provisions, substantial compliance with 25 provisions (33%), partial compliance with 25 provisions (33%), and non-compliance with 25 provisions (33%). (*Mays* ECF No. 168-1 at 6.) Specifically, the "review showed persistence of *critical* issues that impact access to—and quality of care that resulted in serious harm to patients, and places the inmate population at risk of harm if not immediately addressed," including: "Insufficient health care staffing; Insufficient custody staff dedicated to health care delivery; Lack of patient access to care, including custody barriers to care; Lack of evaluation of medical care quality, including mortality reviews; Lack of timely access to specialty services and implementation of recommendations; Failure to deliver ordered care (e.g., cancellation of medication administration); Inadequate evaluation, treatment, and monitoring of patients with substance use disorders; Lack of a Medication Assisted Treatment (MAT) program to induct patients on suboxone or other treatment; [and] Inadequate treatment space and environment of care." (*Id.*) For example, "[t]he County is not providing timely patient access to specialty services, resulting in delayed diagnosis and treatment." (*Id.* at 11–12.) A "detailed case reviews show[ed] multiple lapses in care in many records." (*Id.* at 13 n.21.) The report found that medical "[p]roviders conducted inadequate medical evaluations and treatment leading to deterioration of the patient," including by falsifying medical records and "copy[ing] and past[ing] *previous* examinations into the progress note, *without amending the note to reflect the actual condition of the patient*." (*Id.* at 22.)

54.    Inadequate Diagnosis, Monitoring, and Care: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain a policy or custom whereby jail staff inadequately diagnose, monitor, and provide care for inmates, including failure to respond to immediate medical needs. For example:

(a)    The *Mays* Consent Decree Monitoring Reports of the Medical Experts describe and document persistent and numerous incidents and case reviews where jail staff, including both custody staff and medical staff, failed timely to observe and respond to inmates' immediate medical needs. (*Mays* ECF No. 136-1; *Mays* ECF No. 149-1; *Mays* ECF No. 162-1; *Mays* ECF No. 168-1.) Each of these monitoring reports, including any subsequently-issued monitoring reports, and the incidents described therein, are expressly incorporated herein.

(b)    On July 8, 2023, 43-year-old inmate Michael Prince died at the Sacramento

14

County Jail. On July 2, 2023, Prince was admitted to the jail with a medical history including serious mental illness; noncompliance with medications; neuropathy, peripheral due to diabetes; diabetes mellitus, type 2; elevated blood pressure reading without diagnosis of hypertension; diabetic peripheral neuropathy; body aches; alcohol use disorder; anxiety state, unspecified; bipolar disorder; FOSS III; tested positive for COVID-19; heroin abuse; alcohol abuse; and benzodiazepine withdrawal. From July 2, 2023, to July 8, 2023, jail staff failed adequately to house, monitor, and respond to Prince's obvious and deteriorating medical condition. On July 8, 2023, Prince was found dead in his cell. The *Mays* Medical Expert monitors found: "[R]ecord review showed that for one patient housed on the detox unit, nurses did not conduct any withdrawal monitoring during the six days prior to his death."; and "On 7/2/2023, a patient was admitted to the detox unit with alcohol and opioid substance use disorder but nurses did not monitor the patient for the six days the patient was in the unit. The patient died on the morning of 7/8/2023." (*Mays* ECF No. 168-1 at 15.) A civil rights lawsuit was filed. (*Estate of Prince v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-00992-KJM-JDP.) The case remains pending.

(c)   On May 27, 2023, 47-year-old inmate Norman Fisher Jr. died of "septic shock," "Klebsiella bacteremia," "pneumonia," and "non-traumatic acute kidney failure" at the Sacramento County Jail. Fisher's health significantly deteriorated over the course of several weeks, without intervention by jail staff. Fisher's fellow inmates, including his cellmate and floor trustee, attempted to obtain care for Fisher on several occasions, without avail. The custody staff discouraged complaints and the medical staff failed to address Fisher's immediate medical needs. The jail staff were deliberately indifferent to Fisher's escalating symptoms and complaints throughout May 2023, until he died on May 27, 2023. A civil rights lawsuit was filed. (*Estate of Fisher v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:24-cv-00109-DB.) The case remains pending.

(d)   On April 5, 2023, 35-year-old inmate Delion Johnson died of an overdose at the Sacramento County Jail. Johnson was inadequately searched and monitored by jail staff upon intake who failed to detect a "golf-ball sized" baggie of pills in Johnson's jacket. Inside a holding cell, Johnson distributed and ingested drugs over the course of several hours, within sight of an in-cell surveillance camera which was unmonitored by jail staff, and as jail staff walked by but failed to look into the cell

15

while conducting "safety checks." Eventually, Johnson lost consciousness and passed out inside of the cell. Johnson medical emergency was undetected or ignored for more than three hours, as several jail staff members walked by the cell, without observing or checking on Johnson. Eventually, an inmate worker alerted a jail staff member to Johnson's condition. But it was too late and Johnson died. A civil rights lawsuit was filed. (*Estate of Johnson v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-01304-KJM-JDP.) The case remains pending.

(e)     On July 24, 2022, a 67-year-old inmate (Patient #35) died of sepsis at the Sacramento County Jail. On July 12, 2022, the inmate was admitted to the jail with a medical history including opioid substance use disorder, untreated intestinal cancer, 60 lbs. weight loss, and back surgery. On July 13, 2022, the inmate submitted a health request that he had sepsis and a heart infection but medical staff did not timely address the health request. On July 15, 2022, a medical provider saw the inmate who reported weight loss, intestinal cancer, inability to tolerate solid foods without vomiting, and rectal bleeding—symptoms which warranted immediate admission to the hospital for medical evaluation. The medical provider ordered labs and follow-up in one month, treating the inmate's condition as routine. The inmate died. On August 22, 2022, the Medical Director completed a preliminary mortality review which did not identify lapses in care. The *Mays* Medical Expert monitors found: "The Medical Director's failure to recognize, acknowledge and address serious lapses in medical care quality is likely not to result in improvement in medical care quality for patient[s] in custody." (*Mays* ECF No. 168-1 at 138–139; *Mays* ECF No. 162-1 at 79–84.)

(f)     On February 15, 2022, inmate Anthony Galley suffered a seizure caused by severe alcohol withdrawal and died at the Sacramento County Main Jail. On February 13, 2022, Galley was admitted into the jail while intoxicated with a medical history of alcohol use disorder and addiction. Jail staff failed to utilize or implement necessary alcohol detoxification protocols, confined Galley to a holding cell without adequate monitoring, and ignored him until he was found unresponsive and died. (*Mays* ECF No. 153-4; *Mays* ECF No. 162-1 at 76.) A civil rights lawsuit was filed. (*Galley v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:23-cv-00325-WBS-AC.) The case remains pending.

(g)     On September 26, 2021, 44-year-old inmate Anthony Cravotta II was beaten into a

16

coma and suffered a traumatic brain injury at the Sacramento County Main Jail. Cravotta was a mentally ill inmate declared incompetent to stand trial (IST) and awaiting transfer to a state hospital for restorative treatment. Jail staff assigned Cravotta (a white inmate) to share a cell with Lemar Burleson (a Black inmate), another mentally ill inmate, who had an extensive history of violence, including housing in total separation ("T-Sep") housing in isolation from other inmates due to assaultive conduct and documented threats: "said he wanted to kill white people"; "says will assault any cellmates he has"; "Threats to assault anyone he is celled with"; "threatened to assault any inmate he is housed with"; and "said he would assault any inmate he gets." On September 24, 2021, one day after Cravotta and Burleson were housed together, a jail staff member reported a conversation with Cravotta: "he got a new cellmate but 'It's not working out too well'" and "said 'if he gets physical I'll have to defend myself.'" On September 26, 2021, Burleson attacked Cravotta inside their cell, including striking Cravotta several times in the head and face with a "blunt" object. Cravotta lay bleeding and struggling to breathe on the floor of the cell. A custody staff member failed to look into the cell and discovery Cravotta during his "safety check." Multiple streams of Cravotta's blood began to leak from underneath the cell's door into the jail's dayroom which were visible on the jail's closed-circuit television (CCTV) surveillance system but custody staff responsible for monitoring the video feed failed to observe or detect the visible blood streams. More than 22 minutes after the blood streams were visible on the jail's CCTV surveillance system, and about 55 minutes after the last "safety check" by custody staff, an inmate-trustee noticed the streams of blood leaking from under the door of cell, approached the cell for inspection, and observed Cravotta lying on the ground. In response, Burleson pressed the emergency button inside of his cell and reported to custody staff that he "might have killed" his cellmate. Custody staff responding to the scene left Cravotta lying and struggling to breathe on the ground for several minutes, without attempting to stop the bleeding or placing him into a recovery position. A civil rights lawsuit was filed. (*Cravotta v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:22-cv-00167-DJC-AC.) The case remains pending.

(h)     On July 24, 2021, inmate Timothy Noble died while withdrawing from opiates at the Sacramento County Main Jail. Days earlier, Noble was booked into the jail and began receiving treatment for opiate withdrawal. Jail staff did not provide Noble with special housing or monitoring.

Noble's cellmate observed—but jail staff failed to recognize—that Noble did not eat or drink for two days prior to his death. (SCSD Report No. 2021-224861; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Noble-2021-.pdf>.)

(i)     On August 4, 2020, inmate Travis Welde overdosed at the Sacramento County Main Jail, and died of "hemopericardium due to a ruptured acute myocardial infarction resulting from mixed drug intoxication." Days earlier, Welde was booked into the jail and participated in a medical screening exam where the nurse concluded he was "fit for incarceration." But Welde's urine drug screening test was positive for amphetamines, methamphetamines, THC, MDMA, and opiates. Welde was "engaging in erratic behavior, such as kicking his door and talking nonsensically," and, on August 2, 2020, was transferred to the mental health housing unit. Welde's condition continued to deteriorate, including "smear[ing] feces on himself and his cell walls," "talking to himself" and "yelling unintelligibly," "sweating" or appearing "wet," "flail[ing] his arms," and "sit[ting] and stand[ing] back up repeatedly." On August 3, 2020, Welde told staff that he was "detoxing." But jail staff ignored the threat that Welde was detoxing because "nursing staff believed Welde was outside the time period for detoxing from drug use due to the length of time Welde had been in the jail." Later, the jail's mental health staff concluded that Welde was "gravely disabled" and he was "placed him on the waiting list for a higher level of mental health care." On August 4, 2020, Welde was "standing naked at the cell door," "breathing heavily," and "bouncing back and forth on the balls of his feet." Jail staff asked Welde if he was okay and, in response, Welde "grunted and shook his head." But jail staff continued to ignore him. An hour later, Welde was found lying "face down and naked" on the floor. Jail staff continued to ignore him. Later, jail staff entered the cell and determined that Welde was not breathing and had no pulse. (SCSD Report No. 2020-248721; <https://www.sacda.org/wp-content/uploads/2022/10/ICD-Review-Welde-.pdf>.)

(j)     On December 9, 2019, inmate Antonio Thomas was beaten into a coma by cellmate Joshua Vaden at the Sacramento County Main Jail, and later died from "complications of anoxic encephalopathy associated with assault." Thomas and Vaden had extensive mental health histories known to jail staff, and complaints reflecting difficulties with cellmates based on prior incarceration at the jail. Thomas was held on a probation violation, and Vaden was held on charges of murder. Thomas

and Vaden were housed together in the jail's general population. Vaden submitted a grievance that he did not want to be housed with Thomas which was ignored by jail staff. Vaden attacked Thomas, who repeatedly activated the emergency button in his cell during the attack. Jail staff called the cell in response to the emergency button's activation but, when no response was received, ignored the emergency button's activation. Later, jail staff received notice from an inmate that there was a "man down" in the cell. Jail staff responded to the cell and found Thomas unconscious, more than 10 minutes after the activation of the emergency button inside of the cell. The jail "supervisor's overview" of the classification and housing of Thomas and Vaden found no deficiencies or policy violations by jail staff. A civil rights lawsuit was filed. (*Estate of Thomas v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:20-cv-00903-KJM-DB.) The case was settled pre-trial for $1,500,000

(k)    On July 19, 2019, inmate Nicholas Overbey was found dead inside of his cell at the Sacramento County Main Jail. Overbey was assigned to the jail's special housing but was ignored and unmonitored by jail staff. Overbey's cellmate pressed the emergency call button located inside of the cell and informed jail staff that Overbey was not breathing. Jail staff responded and found Overbey lying on his back foaming at the mouth. Jail staff rubbed Overbey's sternum causing blood and other fluids to expel from his nose and mouth. Overbey's cellmate reported that he "had not been moving for at least a day." (SCSD Report No. 2019-255337; <https://www.sacda.org/wp-content/uploads/2022/04/ICD-Overbey.pdf>.)

(l)    On July 8, 2019, inmate Bryan Debbs was beaten, stabbed, and choked during a nearly 30-minute continuous assault by cellmate Christian Ento at the Sacramento County Main Jail, and later died of "complications of neck compression." Days earlier, Debbs and Ento were classified by jail staff as "gravely disabled" as housed together in a continuously video-monitored cell. Jail staff failed to observe the monitor as Ento assaulted Debbs. A civil rights lawsuit was filed and partially settled for $600,000. (*Estate of Debbs v. County of Sacramento*, United States District Court, Eastern District of California, Case No. 2:20-cv-01153-TLN-DB.) The remainder of the case is pending.

(m)    On June 11, 2019, inmate Andrew Armstead overdosed at the Sacramento County Main Jail, and died of "methamphetamine intoxication." Armstead was booked into the jail and

19

participated in a medical screening exam where the nurse concluded he was "fit for incarceration." A day

after booking, Armstead was summoned for a classification interview but failed to appear. Later, jail staff

observed Armstead inside of his cell and non-responsive on a bunk. Later, Armstead's cellmate pressed

the emergency intercom button inside the cell and reported that Armstead was non-responsive. Later, jail

staff responded to the cell and observed that Armstead had no pulse. Armstead's blood was found to

contain amphetamine and methamphetamine. (SCSD Report No. 2019-204534;

<https://www.sacda.org/wp-content/uploads/2022/04/ICD-Armstead.pdf>.)

55.     Failure to Report In-Custody Deaths: Defendants COUNTY OF SACRAMENTO and

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT sometimes fail to report the deaths of persons

who sustain critical injuries while in-custody at jail facilities but later die outside of jail facilities. For

example, on June 16, 2017, inmate Clifton Harris was beaten into a coma by his cellmate in the

Sacramento County Main Jail. Defendant SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

"released" Harris from custody while he was comatose but before he died eight months later as a result of

the injuries he sustained in-custody. Defendants COUNTY OF SACRAMENTO and SACRAMENTO

COUNTY SHERIFF'S DEPARTMENT did not report Harris' death as an in-custody death. (Sacramento

News & Review, *The Dungeon Master* (Sep. 22, 2020), available at:

<https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/>; Sacramento Bee, *Sacramento*

*CA sheriff won't tell public about jail deaths* (Aug. 17, 2021), available at:

<https://www.sacbee.com/news/local/article253422244.html>.)

56.     Delayed Investigations & Inadequate Re-Training: Defendants COUNTY OF

SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER

maintain a deficient policy and custom of unreasonable delays in investigating in-custody incidents,

injuries, and deaths occurring at jail facilities, including personnel's potential misconduct and policy

violations and the need for new or different policies and procedures to prevent future harm. Defendants

COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT were

obligated but failed timely to create and implement policies related to "Review of Custody Death,"

pursuant to the *Mays* Consent Decree. For example:

(a)     The Report on Suicide Prevention Practices Within the Sacramento County Jail

20

System, filed July 31, 2018, found that "the Sacramento County Jail System does *not* currently engage in a viable mortality review process…" (*Mays* ECF No. 1-4 at 57.)

(b)     The First Monitoring Report of Medical Experts, filed January 20, 2021, found "noncompliance." (*Mays* ECF No. 136-1 at 50–52.) The First Monitoring Report of Suicide Prevention Practices, filed January 20, 2021, found: "This provision is in Non-Compliance." (*Mays* ECF No. 136-3 at 76–77.)

(c)     The Second Monitoring Report of Medical Experts, filed October 4, 2021, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, "[n]one of the reviews assessed the appropriateness of the care provided, the effectiveness of relevant policies and procedures, or identified opportunities for improvement in the delivery of care in order to prevent future deaths" and "[t]here were no corrective action plans developed for any of the deaths, which seems largely due to the failure to recognize that one was needed." (*Mays* ECF No. 149-1 at 64.)

(d)     The Third Monitoring Report of Medical Experts, filed October 25, 2022, found that "[t]he Mortality Review process fails to identify problems with health care systems and quality of care," for example, that "reviews still lack identification and analysis of lapses in care, systemic issues, and opportunities for improvement" and that, "*in several cases, significant lapses in care and system issues were unrecognized, glossed over, or ignored all together.*" (*Mays* ECF No. 162-1 at 13.)

(e)     The Fourth Monitoring Report of Medical Experts, filed August 15, 2023, found "[l]ack of evaluation of medical care quality, including mortality reviews." (*Mays* ECF No. 168-1 at 6.) Specifically, "[i]n the over 3 years since the Consent Decree has been in effect, the County has not developed and implemented any system for evaluation of medical care quality to ensure that it meets contemporary standards of medical care." (*Id*. at 13.) For example, "*identification and evaluation of medical care quality is virtually absent, even in mortality records that show multiple lapses in care*" and "[c]orrective action plans are exclusively devoted to system and nursing issues, not medical care quality issues." (*Id*. at 13.) "This has been a persistent issue throughout monitoring resulting in adverse patient outcomes." (*Id*. at 13–14.)

57.     <u>Media Reporting on Jail Conditions</u>: Defendants COUNTY OF SACRAMENTO and

21

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT's deficient policies and customs are documented in numerous media accounts and reporting. For example:

(a)   The Sacramento Bee, *Sacramento Sheriff Jim Cooper is mismanaging the jail and impairing care for inmates* (Oct. 20, 2023), available at: <https://www.sacbee.com/opinion/op-ed/article280720760.html> ("There are pervasive, well-documented examples of sheriff staff postponing specialty care, overriding physician orders, cutting corners on required medical screenings, ignoring medical evaluation requests, neglecting psychiatrically ill patients and skipping entire days of medication distributions. This undermining of medical professionals and obstruction of constitutionally-mandated medical care should never occur, and yet it has become routine in Sacramento County jails.").

(b)   CapRadio, *Grand jury calls for Sacramento County jail improvements, warns of receivership risk* (June 5, 2023), available at: <https://www.capradio.org/articles/2023/06/05/grand-jury-calls-for-sacramento-county-jail-improvements-warns-of-receivership-risk/> ("Sacramento County risks losing control of its two jails to a court-appointed receiver if it doesn't improve detention conditions, a grand jury warned in a report…").

(c)   The Sacramento Bee, *Sacramento Main Jail Allows Inmates to Suffer During COVID* (Nov. 9, 2021), available at: <https://www.sacbee.com/opinion/op-ed/article255652546.html> ("Sacramento is on track to have the deadliest jail per capita in California.").

(d)   Sacramento News & Review, *The Dungeon Master* (Sep. 22, 2020), available at: <https://sacramento.newsreview.com/2020/09/22/the-dungeon-master/> ("Sacramento County had the third most jail deaths in the state last year," despite "Sacramento County ha[ving] a smaller population than [] seven [other] counties"; County jail facilities have "lost more than 40 people in his jails over the past decade, according to state justice data and news accounts…").

(e)   *Marshall v. Superior Court*, No. S263043, 2020 Cal. LEXIS 4730, at *10 (Cal. July 15, 2020) (Liu, J., dissenting) ("Based on the allegations contained in the 54 inmate declarations before us, petitioners have made a prima facie case that the Sacramento County Sheriff is acting with deliberate indifference to the health and safety of the inmates in violation of the Eighth Amendment to the federal Constitution. The declarations paint a grim picture of the inmates' conditions of confinement." (internal citations omitted).)

58.     <u>Records Destruction Policies/Failure to Retain Records</u>: Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintain an official written policy, also known as a "General Order," concerning "Destruction of Records" and "Complaints and Disciplinary Policies and Procedures." The records-destruction policy expressly provides: "Records of complaints, investigations and dispositions shall be retained by Internal Affairs for a period of at least five and one half years." Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER actively employ the records-destruction policies to destroy records as soon as permitted by policy, including records documenting inmate deaths and internal affairs records. For example, as of January 2022, Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT failed to retain records concerning in-custody deaths at jail facilities older than 2017. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's records-destruction policies and practices obfuscate histories of indifference and misconduct, especially when combined with failures to report/investigative delays relating to in-custody incidents.

59.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER do not meaningfully discipline, re-train, correct, or otherwise penalize jail staff involved in critical incidents where preventable deaths and injuries are sustained by inmates, including those described above. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's routine failure to hold jail staff accountable has created and encouraged an environment where jail staff believe they can "get away with anything."

60.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of the deficient policies or customs because the inadequacies and deficiencies were so obvious and likely to result in the violation of rights of persons, including the death of CODY CATANZARITE.

61.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER's inadequate policies, customs, training, supervision, and control of

1   personnel and inmates was a moving force behind and contributed to the death of CODY

2   CATANZARITE.

### FIRST CLAIM

**Deliberate Indifference / Special Relationship**

**(U.S. Const. Amend. XIV; 42 U.S.C. § 1983)**

62.    Plaintiff ESTATE OF CODY CATANZARITE asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

63.    The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

64.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 inadequately screened, classified, assigned, housed, monitored, and responded to CODY CATANZARITE based on an immediate medical need, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the United States Constitution.

65.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, in violation of the Fourteenth Amendment to the United States Constitution.

66.    Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

67.    CODY CATANZARITE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY CATANZARITE to receive compensatory/survival and nominal

24

damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder appears.

### SECOND CLAIM

**Title II of the Americans with Disabilities Act**

**(42 U.S.C. § 12101, *et seq.*)**

68.     Plaintiff ESTATE OF CODY CATANZARITE (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

69.     The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

70.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. CODY CATANZARITE had a physical impairment that substantially limited one or more major life activities and had a record of such an impairment.

71.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed reasonably to accommodate CODY CATANZARITE's disability, where they could have provided a reasonable accommodation, including by: (a) conducting an adequate medical screening for CODY CATANZARITE; (b) issuing routine medical orders for CODY CATANZARITE, such as Clinical Opiate Withdrawal Scale (COWS) and Clinical Institute Withdrawal Assessment (CIWA) assessments, alcohol and opioid detox regimens, or an urgent referral to a medical provider; (c) conducting a timely medical screening for CODY CATANZARITE; (d) transferring CODY CATANZARITE to a facility that could provide necessary medical care or treatment; (e) monitoring CODY CATANZARITE based on an immediate medical need; and/or (f) timely responding to CODY CATANZARITE based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Americans

25

with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

72.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

73.     Plaintiff CODY CATANZARITE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY CATANZARITE to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder appears.

**THIRD CLAIM**

**Section 504 of the Rehabilitation Act**

**(29 U.S.C. § 701, *et seq*.)**

74.     Plaintiff ESTATE OF CODY CATANZARITE (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

75.     The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

76.     Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104, and receive federal financial assistance. CODY CATANZARITE had a physical impairment that substantially limited one or more major life activities and had a record of such an impairment.

77.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed

26

reasonably to accommodate CODY CATANZARITE's disability, where they could have provided a reasonable accommodation, including by: (a) conducting an adequate medical screening for CODY CATANZARITE; (b) issuing routine medical orders for CODY CATANZARITE, such as Clinical Opiate Withdrawal Scale (COWS) and Clinical Institute Withdrawal Assessment (CIWA) assessments, alcohol and opioid detox regimens, or an urgent referral to a medical provider; (c) conducting a timely medical screening for CODY CATANZARITE; (d) transferring CODY CATANZARITE to a facility that could provide necessary medical care or treatment; (e) monitoring CODY CATANZARITE based on an immediate medical need; and/or (f) timely responding to CODY CATANZARITE based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

78.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

79.     Plaintiff CODY CATANZARITE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY CATANZARITE to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder appears.

## FOURTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

80.     Plaintiffs M.M. and LINDA CATANZARITE assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM

27

COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

81.     The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

82.     Plaintiffs M.M. and LINDA CATANZARITE shared a close relationship and special bond with CODY CATANZARITE, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs M.M. and LINDA CATANZARITE frequently visited and spoke with CODY CATANZARITE.

83.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs M.M. and LINDA CATANZARITE's familial association with CODY CATANZARITE, in the violation of the Fourteenth Amendment to the United States Constitution.

84.     Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

85.     Plaintiffs M.M. and LINDA CATANZARITE were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory/wrongful death and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiffs M.M. and LINDA CATANZARITE pray for relief as hereunder appears.

\ \ \

\ \ \

\ \ \

28

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

86.     Plaintiffs M.M. and LINDA CATANZARITE assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

87.     The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

88.     Plaintiffs M.M. and LINDA CATANZARITE shared a close relationship and special bond with CODY CATANZARITE, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a loving relationship, prior to his death. Plaintiffs M.M. and LINDA CATANZARITE frequently visited and spoke with CODY CATANZARITE.

89.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs M.M. and LINDA CATANZARITE's familial association with CODY CATANZARITE, in the violation of the First Amendment to the United States Constitution.

90.     Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

91.     Plaintiffs M.M. and LINDA CATANZARITE were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory/wrongful death and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiffs M.M. and LINDA CATANZARITE pray for relief as hereunder appears.

## SIXTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

92.     Plaintiff ESTATE OF CODY CATANZARITE asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

93.     The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

94.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 knew or had reason to know that CODY CATANZARITE was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

95.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, in violation of California Government Code § 845.6.

96.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and/or DOE 1 to 20.

97.     Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE

HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

98.     CODY CATANZARITE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY CATANZARITE to receive compensatory/survival and nominal damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder appears.

## SEVENTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

99.     Plaintiffs ESTATE OF CODY CATANZARITE (pursuant to California Code of Civil Procedure § 377.30), M.M., and LINDA CATANZARITE assert this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

100.     The allegations of the preceding paragraphs 1 to 98 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

\ \ \

31

Deliberate Indifference / Special Relationship

101.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 inadequately screened, classified, assigned, housed, monitored, and responded to CODY CATANZARITE based on an immediate medical need, putting him at substantial risk of suffering serious harm, without taking reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

102.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Title II of the Americans with Disabilities Act & Section 504 of the Rehabilitation Act

103.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed reasonably to accommodate CODY CATANZARITE's disability, where they could have provided a reasonable accommodation, including by: (a) conducting an adequate medical screening for CODY CATANZARITE; (b) issuing routine medical orders for CODY CATANZARITE, such as Clinical Opiate Withdrawal Scale (COWS) and Clinical Institute Withdrawal Assessment (CIWA) assessments, alcohol and opioid detox regimens, or an urgent referral to a medical provider; (c) conducting a timely medical screening for CODY CATANZARITE; (d) transferring CODY CATANZARITE to a facility that could provide necessary medical care or treatment; (e) monitoring CODY CATANZARITE based on an immediate medical need; and/or (f) timely responding to CODY CATANZARITE based on an immediate medical need, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

104.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of the

32

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

Unwarranted Interference with Familial Association

105.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 caused the unwarranted interference with, and premature termination of, Plaintiffs M.M. and LINDA CATANZARITE's familial association with CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of the First and Fourteenth Amendments to the United States Constitution; and Article I, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

106.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 knew or had reason to know that CODY CATANZARITE was in need of immediate medical care and failed to take reasonable action to summon such medical care, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

107.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of California Government Code § 845.6.

Failure to Provide Adequate Medical Screening and Care and Staffing

108.     Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed to provide adequate health screening and care to CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of California Code of Regulations title 15 § 1207 (Medical Receiving Screening); and California Code of Regulations title 15 § 1208 (Access to Treatment).

109.     Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to Plaintiff CODY CATANZARITE, with deliberate indifference or reckless disregard, in violation of California Code of Regulations title 15 § 1027 (Number of Personnel); California Code of Regulations title 15 § 1208 (Access to Treatment); and California Code of Regulations title 15 § 1207 (Medical

33

Receiving Screening).

Failure to Provide Adequate Safety Checks and Staffing

110.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed to provide adequate monitoring, supervision, and safety checks on CODY CATANZARITE, with deliberate indifference or reckless disregard in violation of California Code of Regulations title 15 § 1027.5 (Safety Checks).

111.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard in violation of California Code of Regulations title 15 § 1027 (Number of Personnel); and California Code of Regulations title 15 § 1027.5 (Safety Checks).

Failure to Provide Adequate Classification and Staffing

112.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 failed to provide adequate classification, assignment, and/or housing to CODY CATANZARITE, with deliberate indifference or reckless disregard in violation of California Code of Regulations title 15 § 1050 (Classification Plan).

113.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and JIM COOPER maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, with deliberate indifference or reckless disregard in violation of California Code of Regulations title 15 § 1027 (Number of Personnel); and California Code of Regulations title 15 § 1050 (Classification Plan).

(Allegations Common to All Theories)

114.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

34

dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and/or DOE 1 to 20.

115.  Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

116.  CODY CATANZARITE and Plaintiffs M.M. and LINDA CATANZARITE were injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF CODY CATANZARITE, M.M., and LINDA CATANZARITE to receive compensatory/survival and wrongful death and treble damages and civil/statutory penalties against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF CODY CATANZARITE, M.M., and LINDA CATANZARITE pray for relief as hereunder appears.

## EIGHTH CLAIM

### Intentional Infliction of Emotional Distress

117.  Plaintiff ESTATE OF CODY CATANZARITE asserts this Claim (pursuant to California Code of Civil Procedure § 377.30) against Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

35

118.    The allegations of the preceding paragraphs 1 to 61 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

119.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 engaged in outrageous conduct, including by inadequately screening, classifying, assigning, housing, monitoring, and responding to CODY CATANZARITE based on an immediate medical need in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that CODY CATANZARITE would suffer emotional distress and he did suffer severe emotional distress.

120.    Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. engaged in outrageous conduct, including by maintaining policies or customs of action and inaction which resulted in harm to CODY CATANZARITE in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, with intent or reckless disregard of the probability that CODY CATANZARITE would suffer emotional distress and he did suffer severe emotional distress.

121.    Defendant MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. is vicariously liable, through the principles of *respondeat superior*, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JAMIE HERBST, MARIACELINE CLAMOR, and/or DOE 1 to 20.

122.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

123.    CODY CATANZARITE was injured as a direct and proximate result of Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE

1    CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY

2    CATANZARITE to receive compensatory/survival and punitive damages against Defendants JIM

3    COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka

4    MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE

5    CLAMOR, and DOE 1 to 20.

6         WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder

7    appears.

8                              **NINTH CLAIM**

9                               **Negligence**

10        124.    Plaintiff ESTATE OF CODY CATANZARITE asserts this Claim (pursuant to California

11   Code of Civil Procedure § 377.30) against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

12   COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

13   dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

14   JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

15        125.    The allegations of the preceding paragraphs 1 to 123 are realleged and incorporated, to the

16   extent relevant and as if fully set forth in this Claim.

17        126.    Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 owed a duty

18   of care to CODY CATANZARITE and breached a duty, including by inadequately screening,

19   classifying, assigning, housing, monitoring, and responding to CODY CATANZARITE based on an

20   immediate medical need in violation of the United States and California Constitutions, federal and state

21   laws, regulations, policies, standards, general orders, procedures, training, national and local standards,

22   and/or California Civil Code § 1714(a).

23        127.    Defendants JIM COOPER and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

24   STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. owed a duty of

25   care to CODY CATANZARITE, including by maintaining policies or customs of action and inaction

26   which resulted in harm to CODY CATANZARITE in violation of the United States and California

27   Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training,

28   national and local standards, and/or California Civil Code § 1714(a).

128.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE, in violation of California Government Code § 845.6, California Code of Regulations title 15 § 1027, and California Code of Regulations title 15 § 1027.5.

129.    Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable, through the principles of *respondeat superior* and/or pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and/or DOE 1 to 20.

130.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

131.    CODY CATANZARITE was injured as a direct and proximate result of Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF CODY CATANZARITE to receive compensatory/survival damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER, MAXIM HEALTHCARE

SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING

SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF CODY CATANZARITE prays for relief as hereunder

appears.

## TENTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

132. Plaintiff M.M. asserts this Claim against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20.

133. The allegations of the preceding paragraphs 1 to 131 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

134. Defendants JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20 caused CODY CATANZARITE's death by wrongful act and neglect, including by inadequately screening, classifying, assigning, housing, monitoring, and responding to CODY CATANZARITE based on an immediate medical need in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

135. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. caused CODY CATANZARITE's death by wrongful act and neglect, including by maintained policies or customs of action and inaction resulting in harm to CODY CATANZARITE in violation of the United States and California Constitutions, federal and state laws, regulations, policies, standards, general orders, procedures, training, national and local standards, and/or California Civil Code § 1714(a).

136. Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

1    SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC. are vicariously liable,

2    through the principles of *respondeat superior* and/or pursuant to California Government Code §§

3    815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the

4    scope of employment, including Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

5    dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

6    JAMIE HERBST, MARIACELINE CLAMOR, and/or DOE 1 to 20.

7        137.    Defendants JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM

8    STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE

9    HERBST, MARIACELINE CLAMOR, and DOE 1 to 20's actions and inactions constituted oppression,

10    fraud, and/or malice resulting in great harm.

11        138.    CODY CATANZARITE died as a direct and proximate result of Defendants COUNTY

12    OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER,

13    MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

14    HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and

15    DOE 1 to 20's actions and inactions, entitling Plaintiff M.M. to receive compensatory/wrongful death

16    damages against Defendants COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S

17    DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING

18    SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST,

19    MARIACELINE CLAMOR, and DOE 1 to 20; and punitive damages against Defendants JIM COOPER,

20    MAXIM HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

21    HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and

22    DOE 1 to 20.

23        WHEREFORE, Plaintiff M.M. prays for relief as hereunder appears.

24                        **PRAYER FOR RELIEF**

25        WHEREFORE, Plaintiffs ESTATE OF CODY CATANZARITE, M.M., and LINDA

26    CATANZARITE seek Judgment as follows:

27        1.    For an award of compensatory, general, special, and nominal damages (including survival

28    and wrongful death damages under federal and state law) against Defendants COUNTY OF

1    SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM

2    HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

3    HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and

4    DOE 1 to 20, in excess of $20,000,000, according to proof at trial;

5        2.    For an award of exemplary/punitive damages against Defendants JIM COOPER, MAXIM

6    HEALTHCARE SERVICES, INC. dba MAXIM STAFFING SOLUTIONS aka MAXIM

7    HEALTHCARE STAFFING SERVICES, INC., JAMIE HERBST, MARIACELINE CLAMOR, and

8    DOE 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions

9    and/or inactions, as alleged, were motivated by evil motive or intent, involved reckless or callous

10   indifference to constitutionally and statutorily protected rights, or were wantonly or oppressively done;

11   and/or constituted oppression, fraud, or malice resulting in great harm;

12       3.    For funeral and/or burial expenses;

13       4.    For an award of actual damages, treble damages, punitive damages, civil penalties, and

14   any other available relief against Defendants COUNTY OF SACRAMENTO, SACRAMENTO

15   COUNTY SHERIFF'S DEPARTMENT, JIM COOPER, MAXIM HEALTHCARE SERVICES, INC.

16   dba MAXIM STAFFING SOLUTIONS aka MAXIM HEALTHCARE STAFFING SERVICES, INC.,

17   JAMIE HERBST, MARIACELINE CLAMOR, and DOE 1 to 20, pursuant to California Civil Code §§

18   52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against

19   Defendants COUNTY OF SACRAMENTO and SACRAMENTO COUNTY SHERIFF'S

20   DEPARTMENT, pursuant to California Civil Code § 818);

21       5.    For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29

22   U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure §

23   1021.5, and any other statute as may be applicable;

24       6.    For interest; and

25   \ \ \

26   \ \ \

27   \ \ \

28   \ \ \

7.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: April 15, 2024

Respectfully Submitted,

By: _____

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF CODY CATANZARITE,
M.M., and LINDA CATANZARITE

42

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Catanzarite v. County of Sacramento*, United States District Court, Eastern District of California, Case No. _____

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF CODY CATANZARITE, M.M., and LINDA CATANZARITE.

Dated: April 15, 2024                                    Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiffs
    ESTATE OF CODY CATANZARITE,
    M.M., and LINDA CATANZARITE